**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-30235

TOM BEANAL, on behalf of himself
and all others similarly situated, ET AL.,

Plaintiffs,

TOM BEANAL, on behalf of himself and all
others similarly situated,

Plaintiff-Appellant,

versus

FREEPORT-MCMORAN, INC., AND FREEPORT
MCMORAN COPPER AND GOLD, INC.

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

November 29, 1999

Before KING, Chief Judge, and SMITH and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Tom Beanal ("Beanal") brought suit against the defendants in federal district court for alleged violations of international law. The district court dismissed Beanal's claims pursuant to FED.R.CIV.PROC. 12(b)(6). After a careful review of Beanal's pleadings, we affirm the district court.

## I.

### FACTUAL & PROCEDURAL HISTORY

This case involves alleged violations of international law committed by domestic corporations conducting mining activities abroad in the Pacific Rim. Freeport-McMoran, Inc., and Freeport-McMoran Copper & Gold, Inc., ("Freeport"), are Delaware corporations with headquarters in New Orleans, Louisiana. Freeport operates the "Grasberg Mine," an open pit copper, gold, and silver mine situated in the Jayawijaya Mountain in Irian Jaya, Indonesia. The mine encompasses approximately 26,400 square kilometers. Beanal is a resident of Tamika, Irian Jaya within the Republic of Indonesia (the "Republic"). He is also the leader of the Amungme Tribal Council of Lambaga Adat Suki Amungme (the "Amungme"). In August 1996, Beanal filed a complaint against Freeport in federal district court in the Eastern District of Louisiana for alleged violations of international law. Beanal invoked jurisdiction under (1) 28 U.S.C. § 1332, (2) the Alien Tort Statute, 28 U.S.C. § 1350, and (3) the Torture Victim Protection Act of 1991, sec. 1, et seq., 28 U.S.C. § 1350 note. In his First Amended Complaint, he alleged that Freeport engaged in environmental abuses, human rights violations, and cultural genocide. Specifically, he alleged that Freeport mining operations had caused harm and injury to the Amungme's environment and habitat. He further alleged that Freeport engaged in cultural genocide by destroying the Amungme's habitat and religious symbols, thus forcing the Amungme to relocate. Finally, he asserted that Freeport's private security force acted in concert with the Republic to violate international human rights. Freeport moved to dismiss Beanal's claims

2

under FED.R.CIV.PROC.12(b)(6). The district court in April 1997 issued a thorough forty-nine page Opinion and Order dismissing Beanal's claims without prejudice and with leave to amend. See Beanal v. Freeport-McMoRan, 969 F.Supp. 362 (E.D.La. 1997). Pursuant to Rule 12(e), the district court instructed Beanal to amend his complaint to state more specifically his claims of genocide and individual human rights violations. In August 1997, the district court granted Freeport's motion to strike Beanal's Second Amended Complaint because Beanal inappropriately attempted to add third parties. At the motion to strike hearing, the court again instructed Beanal to plead facts sufficient to support his allegations of genocide and individual human rights violations. In March 1998, the district court granted Freeport's motion to strike Beanal's Third Amended Complaint and dismissed his claims with prejudice. Beanal now appeals the district court's rulings below.[1]

## II.

### STANDARD OF REVIEW

We review the district court's dismissal of a complaint for failure to state a claim upon which relief can be granted de novo. See Lowrey v. Texas A & M University System, 117 F.3d 242, 246 (5th Cir. 1997). A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

---

[1] Amici Curiae have submitted briefs to support Beanal's claims. They include the Sierra Club, Earthrights International, Center For Constitutional Rights, Center for Justice and Accountability, and the Four Directions Council.

him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Blackburn, 42 F.3d 925, 931 (5th Cir. 1995). This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." CHARLES A.. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 1357, at 601 (1969).

### III.

### DISCUSSION

Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. See General Star Indemnity, Co. v. Vesta Fire Ins., Corp., 173 F.3d 946, 950. (5th Cir. 1999). If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e). See 5 WRIGHT & MILLER, FED. PRACTICE & PROCEDURE: Civil § 1356 at 590-591. Finally, a complaint, which contains a "bare bones" allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice. Walker v. South Cent. Bell Tel. Co., 904 F.2d, 275, 277 (5th Cir. 1990). Because the claims raised in Beanal's First and Third Amended Complaints overlap, we address them together.[2]

---

[2] Because Beanal does not challenge on appeal the district court's order to strike his Second Amended Complaint for lack of standing to assert third party claims, we need not address the sufficiency of the Second Amended Complaint.

A.

Alien Tort Statute

Beanal claims that Freeport engaged in conduct that violated the Alien Tort Statute (the "ATS" or "§1350").  Under §1350:

> The district courts shall have original jurisdiction of any civil action by
> an alien for a tort only, committed in violation of the law of nations or
> a treaty of the United States.

Section 1350 confers subject matter jurisdiction when the following conditions are met; (1) an alien sues, (2) for a tort, (3) that was committed in violation of the "law of nations" or a treaty of the United States.  See Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995).  Beanal does not claim that Freeport violated a United States treaty.  Thus, the issue before us is whether Beanal states claims upon which relief can be granted for violations under the "law of nations," i.e., international law.

We observed in 1985, "[t]he question of defining 'the law of nations' is a confusing one which is hotly debated, chiefly among academics." Carmichael v. United Technologies Corp., 835 F.2d 109, 113 (5th Cir. 1985).  However, in Cohen v. Harman, 634 F.2d 318, 319 (5th Cir. 1981)(per curiam), we "held that the standards by which nations regulate their dealings with one another inter se constitutes the 'law of nations.'"  These standards include the rules of conduct which govern the affairs of this nation, acting in its national capacity, in relationships with any other nation. See id. (quoting Valanga v. Metropolitan Life Ins. Co., 259 F.Supp. 324 (E.D. Pa. 1966)).   The law of nations is defined by customary usage and  clearly articulated principles of the international community.  One of the means of ascertaining the law of nations is "by consulting the work of jurists writing professedly on public law or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." See Carmichael, 835 F.2d at 113 (citing United States

5

v. Smith, 18 U.S. (5 Wheat) 152, 160-61, 5 L.Ed. 57 (1820), see also Kadic, 70 F.2d at 238; Filartiga v. Pena-Irala, 630 F.2d 876, 880 (2d Cir. 1980). Courts "must interpret international law not as it was in 1789. but as it has evolved and exists among the nations of the world today." Kadic 70 F.2d at 238; Filartiga, 630 F.2d at 881. Although Beanal's claims raise complex issues of international law; nonetheless, the task before us does not require that we resolve them. We are only required to determine whether the pleadings on their face state a claim upon which relief can be granted. Although the day may come when we will have to join other jurisdictions who have tackled head-on complex issues involving international law, "[t]his case, however, does not require that we stand up and be counted." Carmichael, 835 F.2d. at 113. Beanal's allegations under the ATS can be divided into three categories:(1) individual human rights violations; (2) environmental torts; and (3) genocide and cultural genocide. We address each in turn.

1.

Individual Human Rights Violations

First, Beanal claims that his pleadings sufficiently state claims for individual human rights violations. Essentially, Beanal complains that Freeport engaged in the following conduct; (1) surveillance; (2) mental torture; (3) death threats; and (4) house arrest. See Third Amended Complaint ¶ 25. However, Freeport argues that Beanal's allegations fail to give adequate notice under the federal pleading requirements. Also, Freeport claims that Beanal failed to plead the requisite state action to support his claims under the ATS. The district court found that Beanal merely made nominal changes to his Third Amended Complaint in an attempt to comply with its order to provide a more definite statement of what had happened to him individually. As such, the district court ruled that Beanal's complaint failed to provide a more definite statement of his claims.

6

After reviewing Beanal's pleadings de novo, we agree with the district court's ruling. Beanal's complaint merely makes conclusory allegations. Beanal's claims are devoid of names, dates, locations, times or any facts that would put Freeport on notice as to what conduct supports the nature of his claims. Furthermore, after comparing Beanal's Third Amended Complaint with his Second Amended Complaint, we agree with the district court's observation in that, "Beanal has made a superficial effort to personalize his complaint in order to comply with the court's April and August Order."[3] Although Beanal argues that the district court inappropriately subjected his complaint to a heightened pleading standard, nonetheless, the notice requirements under Rule 8 require more than "bare bone allegations that a wrong has occurred." See South Cent. Bell Tel. Co., 904 F.2d, at 277. Because we affirm the district court's dismissal of Beanal's claims of individual human rights violations under the ATS on the ground that his complaint fails to provide adequate factual specificity as to what had happened to him individually, [4] we need not address whether state-action is required to sustain an action for individual human rights violation under the ATS.

2.

_____

[3] A comparison of Beanal's complaints reveals that Beanal attempted to personalize his Third Amended Complaint by merely substituting the plural subject, "Plaintiffs," with his name. As such, we agree with the district court in that "it is apparent that Beanal has peppered his own name throughout these paragraphs without averring facts giving rise to the claim."

[4] Ironically, allegations made in Beanal's Second Amended Complaint, which were stricken by the district court, provide the requisite factual specificity. For example, in Paragraph 46 of his Second Amended Complaint, Beanal alleged that, "On April 6, 1996, Bagua Kogoya was severely beaten by Freeport Security guards which resulted in Mr. Kogoya being permanently brain damaged." In paragraph 47, he alleged that, "On December 25, 1994, on Freeport bus #44, while being operated on the road from Timika to Tembagapura, Wendy Tambuni was stabbed and shot to death while being transported on said bus." Beanal's Second Amended Complaint contains several similar fact-specific allegations regarding other victims. However, the district court granted Freeport's motion to strike these allegations because Beanal lacked standing to assert them.

7

<u>Environmental Torts and Abuses</u>

Next, Beanal argues that Freeport through its mining activities engaged in environmental abuses which violated international law. In his Third Amended Complaint, Beanal alleges the following:

> FREEPORT, in connection with its Grasberg operations, deposits approximately 100,000 tons of tailings per day in the Aghwagaon, Otomona and Akjwa Rivers. Said tailings have diverted the natural flow of the rivers and have rendered the natural waterways of the plaintiff unusable for traditional uses including bathing and drinking. Furthermore, upon information and belief, the heavy metal content of the tailings have and/or will affect the body tissue of the aquatic life in said rivers. Additionally, tailings have blocked the main flow of the Ajkwa River causing overflow of the tailings into lowland rain forest vegetation destroying the same. Third Amended Complaint ¶ 13.
> FREEPORT in connection with its Grasberg operations has diverted the aforesaid rivers greatly increasing the likelihood of future flooding in Timika, the home of the plaintiff, TOM BEANAL. <u>Id.</u> ¶ 14.
> FREEPORT, in connection with its Grasberg mining operations has caused or will cause through the course of its operations 3 billion tons of "overburden" to be dumped into the upper Wanagon and Carstensz creat ing the likely risk of massive landslides directly injurious to the plaintiff. Furthermore, said "overburden" creates acid rock damage which has created acid streams and rendering the Lake Wanagon an "acid lake" extremely high in copper concentrations, . . . <u>Id.</u> ¶ 15.

However, Freeport argues that Beanal's allegations of environmental torts are not cognizable under the "law of nations" because Beanal fails to show that Freeport's mining activities violate any universally accepted environmental standards or norms. Furthermore, Freeport argues that it would be improper for a United States tribunal to evaluate another county's environmental practices and policies. The district court conducted a t horough survey of various international law principles, treaties, and declarations and concluded that Beanal failed to articulate environmental torts that were cognizable under international law.

8

Beanal and the amici refer the court to several sources of international environmental law to show that the alleged environmental abuses caused by Freeport's mining activities are cognizable under international law. Chiefly among these are the Principles of International Environmental Law I: Frameworks, Standards and Implementation 183-18 (Phillip Sands ed,. 1995) ("Sands"),[5] and the Rio Declaration on Environment and Development, June 13, 1992, U.N. Doc. A/CONF. 151/5 rev.1 (1992) (the "Rio Declaration").

Nevertheless, "[i]t is only where the nations of the world have demonstrated that the wrong is of mutual and not merely several, concern, by means of express international accords, that a wrong generally recognized becomes an international law violation in the meaning of the [ATS]." Filartiga, 680 F.2d at 888. Thus, the ATS "applies only to shockingly egregious violations of universally recognized principles of international law." See Zapata v. Quinn, 707 F.2d 691, 692 (2d Cir. 1983)(per curiam). Beanal fails to show that these treaties and agreements enjoy universal acceptance in the international community. The sources of international law cited by Beanal and the amici merely refer to a general sense of environmental responsibility and state abstract rights and liberties devoid of articulable or discernable standards and regulations to identify practices that constitute international environmental abuses or torts. Although the United States has articulable standards embodied in federal statutory law to address environmental violations domestically, see The National Environmental Policy Act (42 U.S.C. § 4321 et seq.) and The Endangered Species Act (16 U.S.C. § 1532), nonetheless, federal courts should exercise extreme caution when adjudicating environmental claims under international law to insure that environmental policies of the United

_____

[5] Sands features three environmental law principles: (1) the Polluter Pays Principle; (2) the Precautionary Principle; and (3) the Proximity Principle.

9

States do not displace environmental policies of other governments. Furthermore, the argument to abstain from interfering in a sovereign's environmental practices carries persuasive force especially when the alleged environmental torts and abuses occur within the sovereign's borders and do not affect neighboring countries.[6] Therefore, the district court did not err when it concluded that Beanal failed to show in his pleadings that Freeport's mining activities constitute environmental torts or abuses under international law.

3.

Genocide and Cultural Genocide

Beanal claims that Freeport engaged in acts of genocide and cultural genocide. In his First Amended Complaint, Beanal alleged that Freeport's mining operations caused the Amungme to be displaced and relocate to other areas of the country. He also alleged that Freeport's mining activities destroyed the Amungme's habitat. As such, Beanal asserted that Freeport purposely engaged in activity to destroy the Amungme's cultural and social framework. However, Freeport attacked Beanal's allegations claiming that cultural genocide is not recognized as a discrete violation of international law. The district court relying chiefly on the express language of Article II of the Convention on the Prevention and Punishment of the Crime of Genocide, 78 U.N.T.S. 277 (the "Convention on Genocide"), concluded that cultural genocide was not recognized in the international

---

[6] Although Beanal cites the Rio Declaration to support his claims of environmental torts and abuses under international law, nonetheless, the express language of the declaration appears to cut against Beanal's claims. Principle 2 on the first page of the Rio Declaration asserts that states have the "sovereign right to exploit their own resources pursuant to their own environmental and developmental policies," but also have "the responsibility to ensure that activities within their jurisdiction or control do not cause damage to the environment or other States or areas beyond the limits of national jurisdiction." Beanal does not allege in his pleadings that Freeport's mining activities in Indonesia have affected environmental conditions in other countries.

community as a violation of international law. The district court then instructed Beanal to amend his complaint to allege genocide. Specifically, the court instructed Beanal to allege facts that would demonstrate that "he [was] the victim of acts committed with the intent to destroy the people of the Amungme tribe . . . ." Consequently, the district court found that Beanal's Third Amended Complaint failed to comply with its express instructions.

A review of Beanal's Third Amended Complaint reveals that his claim of genocide suffers from the same pleading defects that plagued his other claims of individual human rights violations. Beanal's complaint is saturated with conclusory allegations devoid of any underlying facts to support his claim of genocide. Although the pleading requirements under Rule 8 are to be liberally construed in favor of the plaintiff, nevertheless, the rule requires more than "bare bone allegations." See Walker 904 F.2d at 277.

Notwithstanding Beanal's failure to allege facts to support sufficiently his claim of genocide, Beanal and the amici in their respective briefs urge this court to recognize cultural genocide as a discrete violation of international law. Again, they refer the court to several international conventions, agreements, and declarations. Nevertheless, a review of these documents reveals that the documents make pronouncements and proclamations of an amorphous right to "enjoy culture," or a right to "freely pursue" culture, or a right to cultural development.[7] They nonetheless fail to

---

[7] Examples of the documents cited by Beanal and the amici are the International Covenant on Civil and Political Rights, Art. 27,999 U.N.T.S. 171, 6 I.L.M.368 (140 parties )(entered into force 1976)(ethnic minorities "shall not be denied the right . . . to enjoy their own culture."); International Covenant on Economic Social and Cultural Rights, Art. I(1); ICESCR: Art. I(1), 993 U.N.T.S. 3 (138 parties)(entered into force 1976)(all peoples enjoy a right to "freely pursue their . . . cultural development."); Universal Declaration on Human Rights, Art. 22, G.A. Res. 217 (III)(A)(Dec. 10, 1948) reprinted in Ian Brownlie, ed. Basic Documents on Human Rights 21 (3rd ed. 1992)(all persons are entitled to cultural rights indispensable for dignity).

11

proscribe or identify conduct that would constitute an act of cultural genocide. As such, it would be problematic to apply these vague and declaratory international documents to Beanal's claim because they are devoid of discernable means to define or identify conduct that constitutes a violation of international law. Furthermore, Beanal has not demonstrated that cultural genocide has achieved universal acceptance as a discrete violation of international law. Thus, it would be imprudent for a United States tribunal to declare an amorphous cause of action under international law that has failed to garner universal acceptance.[8] Accordingly, we find that Beanal's claims of genocide and cultural genocide are facially insufficient to withstand a motion to dismiss under Rule 12(b).

B.

Torture Victim Protection Act

Beanal claims that his allegations of individual human rights violations are also actionable under the TVPA. The TVPA provides an explicit cause of action for torture and extrajudicial killings. See 28 U.S.C. § 1350, note, § 2. In pertinent part, the statute declares that any individual who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or extrajudicial killing shall, in a civil action, be liable for damages. Id. § 2(a)(1), and (2). Freeport argues that the TVPA does not apply to corporations. In other words, an "individual" is not a corporation under the TVPA. The district court applied a plain language interpretation of the statute and reviewed the legislative history and ruled that the TVPA does not apply to corporations.

---

[8] In earlier drafts of the Convention on Genocide, there were proposals to incorporate cultural genocide into the definition of genocide. However, after much debate, the concept of cultural genocide was explicitly excluded. See Ronald C. Slye, Apartheid As A Crime Against Humanity: A Submission to the North African Truth And Reconciliation Commission, 20 Mich.J. Int'lL. 267, 298 (Winter1999); Matthew Lippman, The Convention on the Prevention and Punishment of the Crime of Genocide: Fifty Years Later, 15 Ariz. J. Int'l & Comp. L. 415, 437 (Spring 1998).

12

Beanal's allegations of individual human rights violations under the TVPA are essentially predicated on the same claims of individual human rights violations under the ATS. Because we find that Beanal fails to state with the requisite specificity and definiteness his claims of individual human rights violations under the ATS, we find that his allegations under the TVPA also suffer from the same pleading defects. Beanal fails to provide sufficient underlying facts to support his claims. Thus, we affirm the district court's dismissal of Beanal's claims under the TVPA on the ground that his allegations fail to provide the requisite factual specificity and definiteness to survive a Rule 12(b) motion to dismiss. Therefore, we need not reach the question of whether a cause of action for individual human rights violations is actionable against a corporation under the TVPA.

IV.

CONCLUSION

We acknowledge that the district court exercised considerable judgment, discretion, and patience below. In light of the gravity and far ranging implications of Beanal's allegations, not only did the court give Beanal several opportunities to amend his complaint to conform with the minimum requisites as set forth in the federal rules, the court also conscientiously provided Beanal with a road-map as to how to amend his complaint to survive a motion to dismiss assuming that Beanal could marshal facts sufficient to comply with the federal rules. Nevertheless, Beanal was unable to put before the court a complaint that met minimum pleading requirements under the federal rules. Accordingly, we AFFIRM the district court.

AFFIRM.

13